## Hempfling's Administratrix v. Andrews Steel Company.

### (Decided June 5, 1917.)

### Appeal from Campbell Circuit Court.

Master and Servant—Contributory Negligence of Servant Bars Right of Recovery.—Where an experienced, capable engineer and craneman was killed when the crane that he was operating turned over, and the evidence shows that the crane was caused to topple over by the failure of the operator to request the services of an assistant furnished by the master, the administratrix of the craneman cannot recover damages from the master.

MYERS & HOWARD and L. J. CRAWFORD for appellant.

FRANK V. BENTON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Henry E. Hempfling, while engaged in operating a locomotive crane at the plant of the Andrews Steel Company, was so injured when the crane toppled over that he died soon afterwards as a result of the injuries, and his widow, as administratrix, brought this suit against the steel company to recover damages for his death.

After the issues had been made up, the case went to trial before a jury, and at the conclusion of the evidence the court directed a verdict for the steel company, and the administratrix appeals.

The alleged negligence relied on was that the crane was not reasonably safe to work with because not sufficiently ballasted or balanced, and was top heavy when attached to and used in lifting and moving heavy objects; that the tracks, upon which the crane car stood, were laid unevenly and one rail was lower than the other, causing the crane to lean in the direction of the lower rail, thereby rendering it more liable to turn over; that the articles being moved by the crane at the time it turned over, consisting of pieces of iron, were too heavy to be lifted or moved by it with safety; that the clamps intended to be attached to the iron rails, on which the crane car was placed, for the purpose of holding it steady, were out of repair and no assistant had been furnished to attach them to the rails; that the steel company was guilty of negligence in failing to furnish a sufficient, or any, number of employes to help operate the crane with safety; that only one assistant or helper was furnished, and he was inexperienced and incapable of performing the duties for which he was selected.

The answer was a traverse, a plea of contributory negligence, and assumed risk.

The decedent, Hempfling, who was about fifty years old, had been employed at the plant of the steel company for about three years engaged in different kinds of work, and during this time had operated the crane that he was operating when injured a sufficient number of times to be entirely familiar with its construction and its operation, as well as with the things it was necessary to do or have done to operate it with safety. Before working at the steel plant he had been a sawmill engineer for some ten or twelve years, and so it may safely be said that he was not only a capable but an experienced man.

John Welch, who was present when the crane turned over, testified that the crane rested on a flat car, which was supported by trucks at each end of the car, with two wheels on each side of the trucks; that these wheels were so adjusted that the car could run on the track used for ordinary railroad freight cars; that there was a little house on top of the flat car in which the engine and machinery used to operate the crane were located, and where the engineer stood when operating the engine and crane; that there was a platform on the floor of this little house probably two feet high, and in the end of the house there was a window through which the engineer standing on the platform could observe and control the movement of the

boom of the crane and also see the objects intended to be lifted by the crane.

He further said that on the day of the accident Hempfling, as engineer, by means of the boom on the crane, was lifting out of a gondola car, which was standing on the same track as the crane car and coupled to it, some iron moulds; that these moulds weighed from 6,500 to 7,500 pounds each; that the engineer from his position in the little house on the crane car had a good view of the open car from which the moulds were being unloaded; that when the moulds were lifted from the car by a magnet attached to the boom, they were set out on the ground some six or eight feet from the track; that he was on the ground with a rod and hook for the purpose of placing the moulds in a pile, and had been working there in that capacity with Hempfling about two days; that the crane had been in operation about 3½ years, and was in good repair and capable of lifting with safety the moulds being taken out of the car.

He further said that Hempfling had been operating this crane at different times for about a year, and that he had also operated cranes; that Hempfling at this time was the crane operator and he was his helper; that Hempfling was in charge of the work, and it was his duty as helper to obey any orders or directions that Hempfling gave him, and that he would have carried out any order or directions if he had received any, but that Hempfling did not give him any directions what to do or what signals to give in connection with the operation of the crane, although he was in a position to give and could have given him such signals if he had been requested. He also said that the car on which the crane stood was equipped with four appliances called outriggers, two on each side, and also with four clamps, two on each end of the car; that these outriggers were attached to the car so that they might be used at any time for the purpose of preventing the crane from toppling over, and that they could be so adjusted as to prevent this; that these outriggers, when it was deemed necessary to use them while heavy objects were being lifted, acted as supports for the truck and prevented it from being tilted over; that the clamps were attached to each end of the car and were suspended by a chain over each rail, and when necessary could be attached to the rail, and these would also prevent the truck from toppling over.

It further appears from his evidence that neither the outriggers nor the clamps were in use that day, nor did Hempfling ask him to adjust either of them or say anything to him about them, although it was the business of the engineer when he considered it necessary to fasten the clamps or adjust the outriggers, to either direct his helper to do it or assist him in doing it, and that he would have done all these things if he had been directed by the engineer, Hempfling, to do so; that immediately before the accident two of the moulds had been lifted from the car and put on the ground by the crane operated by Hempfling, and he was in the act of lifting a third mould, which weighed about a thousand pounds less than either of the first two, from the car to the ground when the crane toppled over; that when the third mould had been lifted up from the bottom of the car to a point about even with the top of the sideboards on the car, Hempfling, with the machinery at his hand, moved the boom of the crane, with the mould attached to the magnet on the boom, out from the side of the car for the purpose of putting it on the ground; that in attempting to do this, he did not lift the mould quite high enough to clear the sideboards of the car, and while it was hanging against the sideboards, Hempfling, with the aid of the boom, was pulling it out so as to clear the car, and when it pulled away from the side of the car, it went with a jerk, and the strain on the boom caused by this jerk when the mould was freed from the side of the car, caused the crane to topple over. He also said that the track and everything about the crane were in good working order.

Dooley, who was employed by the steel company as shipping clerk and weighmaster, was in the car from which the moulds were being lifted at the time of the accident, but had nothing to do with assisting in the operation of the crane, nor did he testify as to what caused the accident.

Charles O. Carpenter, who before the accident had been employed by the steel company, returned five or six days after it occurred and found one of the clamps so badly broken that it could not be used. He testified that it was proper to have a helper to give signals to the operator of the engine, and also said that the track was on a curve at that point and one of the rails was lower than the other. He had also heard of the crane toppling over two or three times before this, but did not know the reason why.

Robert Lunsford and Everett Stith said it would not be safe for one man to operate the crane without a helper to give signals.

William Moore also testified that one rail was higher than the other. Verner Berberidge gave about the same testimony.

It was also offered to be proved by Verner Stephens that it was not safe to operate the crane without the use of outriggers when handling these moulds.

There was also some evidence offered and refused to the effect that it was the duty of the helper to put on the outriggers and clamps.

The evidence, without reciting more of it, tends to show: (1) That Hempfling was an experienced engineer and craneman. He knew all about everything that it was necessary to do or to have done in connection with the work he was doing; and that he was directly in charge of it, there can be no doubt. (2) That he had lifted out of the car with the crane just before the accident two moulds each heavier by several hundred pounds than the one he was lifting when the crane toppled over. (3) That the mould had not been lifted high enough to clear the side-boards of the car, and when it was pulled loose by the outward movement of the boom, it swung out with a sudden jerk, thereby putting such a strain on the boom as to cause it to turn the crane over. (4) That Welch, a capable and experienced man, was present and ready and willing to render any assistance to Hempfling that he needed in the way of giving signals or attaching the outriggers or clamps, but that he was not asked, or directed by him, to render any assistance of any kind. (5) That the crane car was equipped with outriggers and clamps, and while there is some evidence that some of the clamps were broken, this is not material, because no effort was made to attach them. (6) That the outriggers were in good condition and that if they had been adjusted, the crane would not have tilted over. (7) That it was Hempfling's business to either adjust the outriggers and clamps himself or direct Welch to do so, but that he did not give any directions concerning, or say anything whatever about, either the clamps or the outriggers. (8) That the track was on a curve and the outside rail was higher than the inside rail, which is the usual and customary way in which rails are laid on curved tracks. (9) That there was some evidence that the track was out of repair.

The evidence being as stated, we are satisfied that the court committed no error in ordering the directed verdict. The unfortunate accident that resulted in the death of Hempfling was not caused by any fault or negligence on the part of the steel company, or any defect in the appliances with which he worked or the place where he worked. It was due entirely to the fact that the mould being lifted out hung on the side of the car. That this is so, is further made plain by the fact that two heavier moulds had been lifted out of the car immediately preceding the accident without any difficulty, so far as the record shows.

It may be admitted that the accident would not have happened if Hempfling had received signals from an assistant or helper, but the fact that he did not receive such signals was altogether due to his failure to direct Welch to give him signals. The undisputed evidence is that Welch was there for the purpose of giving signals if Hempfling called on him to do so, and that he was in a position to give signals if Hempfling had requested him. It is also plain that Hempfling was of the opinion that he did not need any signals or else he would have made some suggestion to Welch about it.

It is also plain that he did not think it necessary to attach or adjust either the clamps or the outriggers, because two of the clamps and all of the outriggers were in good condition, and Hempfling knew very well the purpose for which outriggers and clamps were used and when it was necessary to use them. But, as we have said, the crane did not topple over because of the failure to fasten the clamps or adjust the outriggers, or because of any defect in the track, or because one rail was higher than the other; but was due solely to the fact that the mould being lifted hung on the top of the side of the car.

Counsel complain about the ruling of the court in rejecting evidence, but we have read the offered evidence and considered and disposed of the case on the assumption that all of the rejected evidence should have been admitted.

Much is also said about the testimony of Carpenter and the failure of the trial court to permit its contradiction, but if the statements made by him in the office of the attorneys for the administratrix had been read for the purpose of contradicting him, it would not in the slightest degree have helped the case for the administratrix, for we repeat that the accident was due entirely to the cause

to which we have attributed it, and this cause could easily have been removed by Hempfling if he had thought it necessary to do so. No one is to blame for the accident except Hempfling and he, unfortunately, paid the penalty of his want of care—if he was careless in the respect mentioned—with his life.

After a careful consideration of the evidence introduced, as well as the evidence rejected, and the other features of the case to which our attention has been directed by counsel, we see no escape from the conclusion that the ruling of the lower court was correct, and the judgment. is affirmed.